# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WILLIAM J. CANCIENNE, JR.**               **CIVIL ACTION**

**VERSUS**                                     **NO. 06-10555**

**BURL CAIN, WARDEN**                    **SECTION "K"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

## I.    Factual and Procedural Background

The petitioner, William J. Cancienne, Jr. ("Cancienne"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On February 22, 2001, Cancienne was indicted by a Grand

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 4.

Jury in Jefferson Parish with aggravated rape upon a known juvenile, aggravated oral sexual battery upon a known juvenile, and aggravated incest upon a known juvenile.[3]

The record reflects that in May, 1998, the victim, A.C., who was ten years old, along with her younger brother, moved to Kenner, Louisiana, to live with Cancienne, their biological grandfather, and their step-grandmother.[4] A few months after they moved in, Cancienne began to inappropriately touch A.C. over her clothes on her breasts and buttocks. Shortly after the inappropriate touching commenced, while A.C. was watching television in Cancienne's bedroom, Cancienne entered the room, placed A.C. on the bed, took off A.C.'s clothing, undressed himself, got on top of A.C. and "took his private and stuck it in [her]." Afterwards, Cancienne ejaculated onto a towel. Cancienne told A.C. not to tell anyone or he would go to jail.

At trial, A.C. testified that Cancienne raped her more than one time before her twelfth birthday. The rapes usually took place in Cancienne's bedroom, but sometimes they occurred in Cancienne's vehicle on the Bonne Carre Spillway. A.C. stated that Cancienne would wear a condom sometimes when he forced her to have vaginal intercourse.

A.c. also testified that shortly after her eleventh birthday Cancienne forced her to perform oral sex on him. Cancienne took her into the bedroom, pulled down his pants, then told her to get on her knees and "suck it." A.C. testified that Cancienne forced her to perform oral sex more often than he vaginally raped her.

---

[3]St. Rec. Vol. 4 of 10, p. 18.

[4]The facts of the case were taken from the opinion of the Louisiana Fifth Circuit Court of Appeal on appeal. St. Rec. Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-366, 10/16/03; *State v. Cancienne*, 857 So.2d 42 (La. App. 5th Cir. 2003) (Table).

During this time period, Cancienne coerced A.C. by informing her that if she did not cooperate, she would not get "clothes and shoes and stuff." Cancienne also informed A.C., in her words, "that my mama don't love me, that's why I'm living with him." On several occasions, Cancienne left pornographic photographs from the internet on A.C.'s bed for her to find when she arrived home from school. Cancienne also bought A.C. a vibrator.[5] A.C. testified that Cancienne told her to use the vibrator as an "excuse" in case she was examined by a doctor who detected signs of sexual activity. Also, Cancienne rubbed the vibrator on A.C.'s chest and on her "private" on more than one occasion when he sexually abused her.

In August, 2000, a few days before her thirteenth birthday, A.C. got into an argument with her step-grandmother while Cancienne was working offshore. As a result of the argument, A.C. moved in with her mother in LaPlace. Although Cancienne called A.C. daily, she refused to speak with him. Cancienne sent A.C. a dozen roses for her birthday with a card that read, "I'm sorry I missed your birthday. Hope these roses makes [sic] up for it, one for every year that I have loved you. Hope you still love me as much. Love you always and forever, very, very much, Paw Paw."

While Cancienne was still offshore, he wrote a letter, dated September 1, 2000, which reads:

My dearest love A.C.:

Well, here I am laying in bed wishing you were here and always thinking of you! Gee, I miss you a lot when we are apart. I hope your [sic] doing good [sic] in school and staying away from the [racial slur]. I miss you! I want you to know that I love you, very very very very very [sic] much! I will talk to you somehow when I get home about some things that I have been thinking of since all this s*** went down. Baby it kills me to know that when I get home your [sic] not going to be there, and there's no telling when we will be able to get together. I just can't believe this s*** has happened to us. How and when are we ever going to get some time

---

[5]At trial, Cancienne admitted that he bought the vibrator for his granddaughter, A.C., but he explained that he bought it for her as birth control. He theorized that, if she used a vibrator, she would not seek to participate in sexual intercourse.

alone together??  Please let me know if you have a plan.  I will give you an address where you can send me some letters.  Please destroy tottally [sic] any that I send you and <u>never</u> let anyone else read or know whats [sic] in the letters I send you!!  I miss you!!  Please call me every day and if nothing else tell me <u>you</u> <u>love</u> <u>me</u>, and miss me, and wish I was home with you.  It just means so much to me to hear that from you!!  It hurts me deeply to think that you might not care about me, like I care about you.  I want to spend the rest of my life with you!!  Do you want the same???  I sure hope so!!  Well its [sic] 1:00 p.m. and I need to get some sleep so I can get back up at 4:00 p.m. and grab a shower so I can go back to work.  I'll write some more soon.  Going to dream about you.  I love you a lot so get used to it.  Well I'm back [sic] its [sic] 8:35 p.m. now and I've got another chance to write.  I have a question for you.  Does anything that you and I have been doing have anything to do with why you left home???  I need to know, because if it does we can make some changes.  I need to know the <u>truth</u>!!  If it does [sic] say so, and don't worry about hurting me, because I can take it, I've been hurt before, so you wont [sic] be the first one to do that, but I do need to know.

I keep waiting for the phone to ring but I don't guess it will.  I guess you just don't want to take a couple of minuets [sic] every day to call.  Well [sic] it's after midnight now and I need to get some sleep so I can get up again at 4:30 a.m. to go back to work again.  Anyway if you won't call [sic] maybe you'll write so the address on the next page is how to send me any mail.  Remember just like it's always been what ever [sic] you want is what I'll try to give you.  Nothing will change unless you want it to.  Just let me know.

Love U Always & For Ever,
U know Who

On the next page of the letter, Cancienne included his mailing address and also wrote, "Read and destroy but keep the address" and "A.C. [loves] someone special but who is it.  Please let me know."  At trial, Cancienne stipulated that he authored this letter to his granddaughter.

Around this time, Cancienne also spoke to A.C.'s mother and encouraged her to have A.C. examined by a doctor because he believed that A.C. was sexually active.  On October 30, 2000, when A.C.'s mother confronted A.C. about being sexually active and informed her that she would be examined by a doctor, A.C. told her mother that she "could thank her grandpa for having sex with her."  A.C. also showed her mother the letter that Cancienne had written to her.

The next day, A.C.'s mother reported Cancienne's actions to the St. John Parish District Attorney's office. Because a majority of the incidents occurred in Kenner, the St. John authorities referred the case to the Kenner Police Department ("KPD"). Detective Brian McGregor of the KPD's Criminal Investigation Division, Juvenile Section was assigned to the case.

Detective McGregor met with A.C. and her mother on October 31, 2000. During the interview, A.C.'s mother gave Detective McGregor the vibrator and the letter. Detective McGregor also interviewed A.C. without her mother present. A.C. disclosed that defendant had forced her to have sexual intercourse and perform oral sex on him.

Detective McGregor referred A.C. and her mother to the Jefferson Parish Children's Advocacy Center ("JPCAC"). On November 6, 2000, A.C. and her mother, accompanied by Detective McGregor, went to the Center. Omalee Gordon, a forensic interviewer for the Gretna Police Department, who is assigned to the JPCAC, separately interviewed A.C. and her mother that day. During A.C.'s videotaped interview, which was shown to the jury at trial, she recounted to Ms. Gordon that defendant had forced her to have vaginal intercourse and to perform oral sex on him over a three-year period. A.C. reported that the last incident was in July of that year.

On November 8, 2000, A.C. was examined at Children's Hospital by Dr. Van Nguyen, Dr. Charlotte Bryant, and Dr. Keith Collins. Dr. Collins testified that A.C. reported to the doctors that she was being examined because she had been molested by her grandfather for the last three years. A.C. described "molested" as forced to perform oral sex and have vaginal intercourse. A.C.'s physical examination was within normal limits and did not reveal any genital abnormalities.

On December 27, 2000, Detective McGregor obtained an arrest warrant for Cancienne and arrested Cancienne that same day. At trial, Cancienne denied A.C.'s allegations.

On August 30, 2001, a twelve-person jury, after hearing the testimony of witnesses and reviewing the other evidence, found Cancienne guilty on all three charges.[6] On September 21, 2001, the trial court sentenced Cancienne to life imprisonment for his aggravated rape conviction, to twenty years imprisonment for his aggravated oral sexual battery conviction, and to twenty years imprisonment for his aggravated incest conviction, specifying that the sentences were to run concurrently.[7]

On direct appeal, Cancienne raised six assignments of error. First, Cancienne claimed that the trial court erred in failing to grant challenges for cause with respect to seven jurors. Next, Cancienne contended that the trial court erred with respect to the following evidentiary rulings: denying a request by the defense for a copy of the victim's videotaped interview with the Children's Advocacy Center; allowing the Children's Hospital medical report to be admitted into evidence; denying the defense motion in limine regarding Dr. Scott Benton's testimony; and, limiting the admission of a letter written by the victim to her aunt. Finally, Cancienne argued that the evidence submitted at trial was insufficient to support his convictions for aggravated rape, aggravated oral sexual battery, and aggravated incest.[8]

On October 16, 2003, the Louisiana Fifth Circuit Court of Appeal found no merit to Cancienne's assignments of error.[9] The court also resolved that the trial court failed to notify Cancienne of the appropriate prescriptive period for seeking post conviction relief and of his

---

[6]St. Rec. Vol. 7, pp. 1041-1042.

[7]St. Rec. Vol. 7, pp. 1050-1051.

[8]St. Rec. Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, p. 7, 10/16/03.

[9]St. Rec. Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, pp. 7-28, 10/16/03.

responsibility to register as a sex offender and remanded the matter with directions for the trial court to inform Cancienne of his prescriptive period and registration requirement.[10]

Thereafter, Cancienne sought relief, in connection with the state appellate court's adverse October 16, 2003 opinion, from the Louisiana Supreme Court. The state supreme court denied the application without reasons on April 30, 2004.[11]

Cancienne's conviction became final within 90 days, on July 29, 2004, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1)).

On August 22, 2004, Cancienne filed *pro se* a Uniform Application for Post Conviction Relief with the state trial court.[12] Cancienne's efforts in this regard culminated on April 28, 2006, when the Louisiana Supreme Court denied his writ application.[13]

## II.    Federal Petition

On October 28, 2006, Cancienne filed a petition for federal habeas corpus relief raising the following grounds for relief: (1) the trial court erred in denying his challenges for cause with respective to prospective jurors Marie Stanton, Herman Jackson, Lindsey Keenen, Robert Riviere,

---

[10]St. Rec. Vol. 1 of 10, 5th Cir. Opinion, 03-KA-0366, p. 28, 10/16/03.

[11]*State v. Cancienne*, 872 So.2d 471 (La. 2004); St. Rec. Vol. 8 of 10, tab 15, La. S. Ct. Order, 2003-KO-3284, 4/30/04.

[12]St. Rec. Vol. 2 of 10, tab 6, Uniform Application for Post Conviction Relief (pro se), 9/22/04.

[13]*State ex rel. Cancienne v. State*, 927 So.2d 280 (La. 2006); St. Rec. Vol. 10 of 10, tab 19, La. S. Ct. Order, 2005-KH-2041, 4/28/06.

Nevelyn Richard and Rebecca Veillion;[14] (2) the trial court erred in denying his challenge for cause with respect to juror Randall Parkins;[15] (3) the trial court erred with respect to the following evidentiary rulings: (A) denying a request by the defense for a copy of the victim's videotaped interview, (B) admitting into evidence a medical report regarding an examination of the victim, (C) denying a motion in limine regarding Dr. Scott Benton's testimony, and (D) excluding from evidence portions of a letter written by the victim to her aunt;[16] and, (4) the evidence was insufficient to support his convictions.[17]

The State filed a response in opposition to Cancienne's petition conceding the timeliness of the Complaint.[18] The State, however, raises "procedural objections as to partial non-exhaustion, procedural default and failure to state federal claims."[19] Cancienne filed a reply to the State's response which restates his arguments on the merits and urges that the State's procedural objections are invalid.[20]

---

[14]Rec. Doc. No. 4, pp. 3-9. In his supporting memorandum, Cancienne sometimes refers to prospective juror Richard as "Nevelen Richard", rather than "Nevelyn Richard". However, because "Nevelyn" is the spelling used in the State Record, it is the spelling this Court will employ in the instant Report and Recommendation.

[15]Rec. Doc. No. 4, pp. 9-11.

[16]Ground 3(A) is delineated in Cancienne's memorandum as "Claim Number Two" (Rec. Doc. No. 4, pp. 11-12); ground 3(B) is delineated in Cancienne's memorandum as "Claim Number Three" (Rec. Doc. No. 4, pp. 12-13); ground 3(C) is delineated in Cancienne's memorandum as "Claim Number Four" (Rec. Doc. No. 4, pp. 13-16); and ground 3(D) is delineated in Cancienne's memorandum as "Claim Number Five" (Rec. Doc. No. 4, pp. 16-18).

[17]Ground (4) is delineated in Cancienne's memorandum as "Claim Number Six" (Rec. Doc. No. 4., pp. 18-21).

[18]Rec. Doc. No. 14, p. 4.

[19]*Id*. Despite its procedural objections, the State nevertheless addresses the merits of all of Cancienne's claims.

[20]Rec. Doc. No. 17.

III.     **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.   The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694(2002) (*quoting Williams v. Taylor*, 529 U.S. 362 (2002)).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

*See also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## IV.     Trial Court's Erroneous Denials of Challenges for Cause (Grounds 1 and 2)

Cancienne claims that his constitutional rights were violated by virtue of the trial court's denial of his challenges for cause with respect to venire members, Marie Stanton, Herman Jackson, Lindsey Keenen, Robert Riviere, Nevelyn Richard, and Rebecca Veillion[21] and, with respect to juror, Randall Parkins.

The State concedes that Cancienne argued to both the state appellate court and the state supreme court that the trial court erred in denying his challenges for cause. However, because Cancienne couched his argument in terms of the trial court's error constituting a state law violation rather than a constitutional violation, the State asserts that Cancienne has failed to exhaust his state court remedies.

A review of the pertinent record reflects that Cancienne raised the instant claim in his state court proceedings, but did not specifically provide that the trial court's errors represented a violation of his constitutional rights. However, given Cancienne's *pro se* status, along with the provisions of 28 U.S.C. § 2254(b)(2) which provide that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," the Court determines in its discretion to address the merits of the instant claim.

"The standard for determining when a venire member may be excluded for cause is whether the prospective 'juror's views would prevent or substantially impair the performance of his duties

---

[21]Cancienne used peremptory challenges to excuse Stanton, Jackson, Keenen, Riviere, Richard, and Veillion from the jury pool.

as a juror in accordance with his instructions and his oath.'" *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000), *cert. denied*, 530 U.S. 1286 (2000) (*quoting Wainwright v. Witt,* 469 U.S. 412, 424 (1985). Further, a trial court's decision with respect to whether a prospective juror should or should not be struck for cause is entitled to considerable deference as such a finding is based upon determinations of demeanor and credibility that are peculiarly within the trial court's province. *Wainwright v. Witt*, 469 U.S. at 428.

### A.    Marie Stanton

With respect to Marie Stanton ("Stanton"), Cancienne claims that she should have been excused for cause because she indicated that she would give more weight to the testimony of a law enforcement official and because she had difficulty accepting that a defendant did not have a duty to testify on his own behalf.[22] However, a review of the trial transcript reveals that Ms. Stanton was satisfactorily rehabilitated with respect to affording credibility to witnesses and with respect to Cancienne's constitutional right not to take the witness stand.

Specifically, when asked whether she could follow the court's instruction to the effect that every witness who testifies takes the stand on an equal footing and that she should assess the credibility and veracity of every witness as he or she testifies, Ms. Stanton responded, "Absolutely."[23] Further, Ms. Stanton indicated that she could be fair to both sides and, regarding Cancienne's right to remain silent, indicated that she understood that Cancienne did not have to

---

[22]Rec. Doc. No. 4, pp. 5-6.

[23]St. Rec., Vol. 4 of 10, p. 211, lines 22-32.

prove anything, that she would not "lean towards guilt" because Cancienne did not testify and would not "hold it against him."[24]

In addressing this issue on direct appeal, the Louisiana Fifth Circuit determined that "Ms. Stanton's overall responses demonstrated her willingness to set aside her own opinions, follow the law, and be fair."[25]  The state appellate court based its finding in this regard on the fact that Ms. Stanton was "rehabilitated by the prosecutor through additional questioning," noting Ms. Stanton's testimony to the effect that she would "hold all witnesses on equal footing regardless if they were 'wearing a badge'" and that she "would consider the testimony as a whole."[26]

The Court finds that the above determination of the state appellate court does not represent an unreasonable application of clearly established federal law to the facts of this case.  Accordingly, Cancienne's claim for habeas corpus relief is without merit.

**B.**     **Jackson, Keenan, and Riviere**

With regard to prospective jurors Herman Jackson ("Jackson"), Lindsey Keenen ("Keenan"), and Robert Riviere ("Riviere"), Cancienne contends that they "expressed difficulties with the presumption of innocence" and "expressed a belief that since [the charges] passed the grand jury and [were] not thrown out", "there must be something to the charges."[27]  Accordingly, Cancienne contends that the trial court erred in failing to excuse Jackson, Keenen, and Riviere for cause.

---

[24]St. Rec., Vol. 4 of 10, p. 212, lines 17-20; p. 230, lines 9-13; p. 231, lines 20-23; p. 232, lines 3-4.

[25]St. Rec., Vol 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, p. 17, 10/16/03.

[26]St. Rec., Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, p. 16, 10/16/03.

[27]Rec. Doc. 4, p. 7.

The record shows that the above claim was thoroughly addressed by the Louisiana Fifth

Circuit on direct appeal.  The state appellate court reasoned:

>All three of these challenged jurors were a part of the same jury venire panel. The trial judge instructed the jurors that the filing of an indictment does not create an inference that defendant is guilty.  The trial judge then explained that a defendant is presumed innocent and that the State has the burden of proving his guilt.  The trial judge also instructed the jurors that defendant does not have to testify and no inference can be drawn for his failure to testify.

>During voir dire, defense counsel attempted to explain the function of the grand jury and explore the impact that a grand jury indictment had on the prospective jurors.  When one of the prospective jurors asked defense counsel to explain the purpose of a grand jury again, defense counsel started to explain but the State lodged an objection at which time the trial court offered the explanation.  The trial court explained that the grand jury is only an accusatory body that determines if there are reasonable grounds to bring a case to trial.  The trial judge reiterated that a grand jury indictment does not indicate that there is enough evidence to convict the indicted person of the charged crime.  After the trial court explained the function of the grand jury, no further questions pertaining to [the] grand jury indictment and the presumption of innocence were asked of the challenged jurors.

>Our review of prospective juror Jackson's responses as a whole shows he was willing to decide the case according to the law and not his own opinion.  Although Jackson opined that, because he had been indicted by the grand jury, defendant had probably done something wrong, Jackson expressly stated he believed in the presumption of innocence, understood that the State had to prove its case despite an indictment, and thought he could follow the law on the presumption of innocence.  We find, therefore, that defendant's argument that prospective juror Jackson should have been excused for cause lacks merit.

>Regarding prospective juror Keenan, although she stated that she "believed everybody, except babies, were guilty of something," she did express an ability to follow the law when she stated there had to be proof before a person could be convicted.  Additionally, although Ms. Keenan stated she would think the defendant was hiding something if he failed to testify, she expressly stated she understood the law and could follow it even though the failure of defendant to testify would be on her mind.  Again, we find that defendants' argument that prospective juror Keenan should have been excused for cause lacks merit.

>Further, our review reveals that prospective juror Riviere's responses in voir dire do not demonstrate that he had a problem with the presumption of innocence. When the questions regarding the effect of an indictment on a defendant were asked, Mr. Riviere merely asked for an explanation of the purpose of the grand jury.  He never expressed an opinion regarding the effect of an indictment.  Again, we find

that defendant's argument that prospective juror Riviere should have been excused for cause lacks merit.[28]

Giving the state appellate court's findings of fact regarding the trial court's voir dire instructions and the prospective jurors' responses thereto the presumption of correctness to which they are entitled, the court finds the state court's finding that the trial court did not err in denying petitioner's challenges for cause with respect to prospective jurors Jackson, Keenen and Riviere, does not represent an unreasonable application of clearly established federal law.  Accordingly, the instant claim for habeas corpus relief is without merit.

## C.      Richard and Parkins

With respect to Nevelyn Richard ("Richard") and Randall Parkins ("Parkins"), Cancienne claims they should have been excluded for cause because they both expressed doubts as to the presumption of innocence.[29]   Therefore, they could not be fair in deliberating as jurors in the case.

In response, the State contends that while both did initially express such doubts, they both ultimately acknowledged that they could be fair if adjudicating the matter as a juror.  Therefore, Richard and Parkins were properly seated as jurors in the case.

The Louisiana Fifth Circuit, in resolving this issue, concluded, based upon the voir dire questions posed to Richard and Parkins that both could be impartial and, as such, no exclusion for cause was necessary.  Specifically, the court reasoned:

> Next, defendant claims prospective juror Nevelyn Richard should have been excused for cause because she could not afford the defendant the presumption of

---

[28]St. Rec. Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, pp. 17-19, 10/16/03 (footnotes omitted).

[29]Rec. Doc. No. 4, pp. 7 and 10.

innocence. He contends that her bias was due to the nature of the accusations and the fact that she was a school counselor who would have difficulty putting her personal feelings aside.

Ms. Richard, who was a school counselor, initially indicated that it would be difficult for her to be fair and impartial because, as part of her occupation, she had to deal with children who were in similar situations as the victim in the present case. Ms. Richard expressed deep concern about the presumption of innocence considering the charges but stated, several times, that she accepted the fact defendant was presumed innocent. She subsequently stated she "might" hold defendant's failure to testify against him but agreed she could not convict defendant without any evidence.

Defense counsel challenged Ms. Richard for cause based on her inability to be fair with regard to the Fifth Amendment. The judge denied the challenge and noted that he did not believe Ms. Richard wanted to be there.

While Ms. Richard had strong feelings about the presumption of innocence in cases involving such charges, she consistently stated she accepted the law that defendant was innocent until proven guilty. Although Ms. Richard indicated she "might" hold defendant's failure to testify against him, she nonetheless stated she could not convict him absent any evidence. The trial court, who was in the position to assess her demeanor, apparently found that Ms. Richard understood the law and was willing to follow it. Based on our review of Ms. Richard's overall responses, we find that the trial court was well within its discretion in denying defendant's challenge for cause as to Ms. Richard.

As for Randal[l] Parkins, who was the only challenged juror to serve on the jury, defendant alleges Parkins doubted the presumption of innocence due to his military background and his experience with the military justice system. Defendant ... concedes that, although Parkins initially stated that he had a problem accepting the fact that a person is innocent until proven guilty, after sitting through the entire court process, Parkins felt that he could set his feelings aside. Furthermore, Mr. Parkins expressly stated that, because things have been explained to him and the present court process is different than what he has experienced in the past in military court, he no longer believes that an accused is presumed guilty. The record clearly shows juror Parkins was rehabilitated. We find nothing in the voir dire record to indicate that the trial court abused its discretion in denying defendant's challenge for cause as to Mr. Parkins.[30]

---

[30]St. Rec. Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, pp. 19-21, 10/16/03.

The Court finds that the above determinations regarding Richard and Parkins do not represent an unreasonable application of clearly established federal law to the facts of this case. As such, Cancienne's claim for habeas corpus relief is without merit.

### D.     Veillion

Cancienne claims that his challenge for cause with respect to venire member Rebecca Veillion ("Veillion") should have been granted because of her personal relationship with members of the prosecutor's family.[31] She therefore should not have been seated as a juror in the case.

In response, the State notes that Ms. Veillion did not know the prosecutor himself and that, despite her relationship with the prosecutor's family, she assured the court that she could render an unbiased decision in the case. Therefore, Cancienne fails in his effort to establish that Ms. Vellion could not be fair in deliberating in this case. The appellate court in rejecting the instant claim reasoned that:

> In his final argument in this assignment of error, defendant argues that prospective juror Veillion should have been excused for cause because she knew the prosecutor's family. Veillion stated that she was very close to Assistant District Attorney David Wolff's aunt and cousins. Ms. Veillion admitted that she had never met ADA Wolff but believed her close relationship with his family would cause her to be impartial [sic] because she had heard Mr. Wolff is a good guy.

> When asked by ADA Wolff if she could put aside the fact she knows his family and fairly assess the credibility of the witnesses he presents, Veillion replied that she "would try." She later stated that she is a volunteer with the Junior Deputy Program and, therefore, is friends with many officers in community relations. She expressly stated she could listen to the facts and evidence in the case and make a decision based on what she heard....

> Ms. Veillion had never met the prosecutor but knew some of his relatives. She heard he was a "good guy" and initially thought it might pose a problem with her ability to be impartial. However, Ms. Veillion's overall responses show her

---

[31]Rec. Doc. No. 4, p. 9.

willingness to apply the law. She stated she would try to assess the credibility of witnesses fairly and that she could decide the case based on the evidence presented. There are no facts that reasonably suggest Ms. Veillion would be influenced in arriving at a verdict by her relationship with relatives of the prosecutor. We find that the trial court did not err in denying defendant's challenge for cause as to Ms. Veillion.[32]

As noted above, a state court's decision as to whether or not a juror should be struck for cause is entitled to considerable deference. *Wainwright*, 469 U.S. at 428. Based upon the above, the court finds that the trial court did not abuse the deference to which it is entitled with regard to its rejection of Cancienne's challenge to Ms. Veillion. Accordingly, Cancienne's claim for habeas corpus relief is without merit.

## V.    Trial Court's Erroneous Evidentiary Rulings (Grounds 3A, 3B, 3C, and 3D)

Cancienne argues that the trial court made a series of erroneous evidentiary rulings. He complains that the trial court erred in denying his request for a copy of the victim's videotaped interview; in admitting into evidence the victim's medical report; in failing to limit Dr. Scott Benton's testimony regarding the victim's medical report; and in admitting only a portion of a letter which the victim wrote to her aunt and the State, because the excluded evidence was merely cumulative of other evidence properly admitted.

Alleged errors regarding state procedural matters, such as evidentiary rulings, do not warrant federal habeas corpus relief unless said errors represent a constitutional violation. As the Supreme Court provided in *Estelle v. McGuire*, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. 502 U.S. 62, 67-68 (1991) (footnote omitted). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the

---

[32]St. Rec. Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, pp. 21-22, 10/16/03.

Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21(1975) (per curiam).

The standard for determining whether a trial court's error constitutes a basis for habeas corpus relief is whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (*quoting Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A federal habeas court's role "'is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness.'" *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986) (*quoting Mattheson v. King,* 751 F.2d 1432, 1445 (5th Cir.1985)).

## A.      Victim's Videotaped Interview

Cancienne claims that the trial court erred in denying his request for a copy of the victim's videotaped interview with forensic interviewer, Omalee Gordon. The State, in response, argues that defense counsel was given ample access to the videotaped interview and Cancienne was not prejudiced by the fact that the defense was not provided with a copy of the videotape.

A review of the trial transcript reflects that the State's assessment is correct. It is evident that defense counsel had ample access to the videotape as he was able to extensively use information contained in the videotape to cross-examine the victim.[33] In fact, counsel had apparently watched the videotape so many times that he was able to recall that the victim was wearing tennis shoes

---

[33]*See* St. Rec. Vol. 7 of 10, p. 756, lines 26-32; pp. 757-759; p. 763, line 32; pp. 764; p. 765, lines 10-17; p. 776, line 32; p. 778, lines 1-20.

during the videotaped interview and questioned her as to whether the tennis shoes were ones which her grandfather had bought for her. The victim responded in the affirmative.[34]

Based on counsel's unquestionable familiarity with the videotape, reflecting that the defense was provided with ample access to the videotape, the Court finds that Cancienne was not prejudiced by the fact that the trial court denied defense counsel's request for a copy of the videotape. Accordingly, Cancienne is not entitled to federal habeas corpus relief on this claim.

### B. Victim's Medical Report

Cancienne next contends that the trial court erred in allowing the medical report of the victim's examination at Children's Hospital to be entered into evidence. The basis of Cancienne's contention in this regard is the fact that the report was not a certified copy, as required under La. R.S. § 13:3714, and that the report was not properly authenticated because Dr. Collins, who the State presented to testify about the report, was not the author of the report.

The State, in response, notes the state appellate court's finding to the effect that the information contained in the report was cumulative of properly admitted evidence. Therefore, Cancienne was not prejudiced.

In addressing this issue on direct appeal, the Louisiana Fifth Circuit acknowledged that the admission of the medical report was in violation "of La. R.S. 13:3714 because it was not certified or signed by an administrator or medical records librarian of the hospital."[35] However, it is clear that the trial court's violation of state law in this regard had no "substantial and injurious effect or

---

[34]St. Rec. Vol. 7 of 10, p. 758, lines 21-29.

[35]St. Rec. Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, pp. 23-24, 10/16/03.

influence" with respect to the outcome of Cancienne's trial. *See Brecht*, 507 U.S. at 623. As the state appellate court noted:

> In this case, Dr. Collins participated in compiling the three-page report of the three doctors' initial examination of A.C., which consisted of a history as well as a physical examination. The information presented in the report is entirely cumulative of the victim's testimony at trial as well as her videotaped interview at the JPCAC. At trial, the jury found A.C.'s testimony credible. Thus, we find it unlikely that the report contributed to the defendant's conviction.[36]

Based on the above, the court finds that Cancienne was not prejudiced by the trial court's erroneous admission of the victim's medical report. Accordingly, Cancienne is not entitled to habeas corpus relief.

## C.     Dr. Benton's Testimony

Next, Cancienne contends that the trial court erred in denying his motion in limine seeking to limit Dr. Scott Benton's ("Benton") testimony regarding the victim's medical report because Dr. Benton did not participate in the victim's medical evaluation and, therefore, his testimony amounted to hearsay.[37] Cancienne argues that because of Dr. Benton's lack of knowledge regarding the victim's medical report, in particular, the victim's representations to Dr. Nguyen ("Nguyen") in connection with Dr. Nguyen's examination of the victim, Dr. Benton was not qualified to offer his opinion. Therefore, the trial court, in not granting the defense's motion in limine, violated the dictates of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

---

[36]St. Rec. Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, p. 24, 10/16/03.

[37]As noted by the Louisiana Fifth Circuit, Dr. Benton, at the time he offered his testimony, was the "Medical Director of the Children At Risk Evaluation Center at Children's Hospital." Dr. Benton "was offered by the State as an expert in pediatric forensic medicine." The defense stipulated to Dr. Benton's qualifications, and the trial court accepted Dr. Benton as an expert in the field of pediatric forensic medicine. St. Rec. Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, p. 24, n. 12, 10/16/03.

In its response, the State concedes that Cancienne brought before both the state appellate court and the state supreme court his claim that the trial court erred in denying his motion in limine with regard to Dr. Benton's testimony. However, because Cancienne's claim in this regard "implicated only state law issues" rather than implicating a violation of the federal law enunciated in *Daubert*, the State asserts that Cancienne "did not properly exhaust his claim in the state courts."[38] The State further argues that Cancienne has procedurally defaulted on the instant claim and is therefore prohibited from seeking federal habeas corpus relief.

A review of Louisiana Fifth Circuit's opinion reflects that the court determined that Cancienne was precluded from raising the claim that Dr. Benton's testimony should not have been allowed because it amounted to hearsay testimony, because Cancienne, in violation of La. C. Cr. P. art. 841, "did not contemporaneously raise that objection in the trial court."[39]

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. *See Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.), *cert. denied*, 516 U.S. 1005 (1995) (citation omitted). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. *Amos*, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly

---

[38]Rec. Doc. No. 14, pp. 22-23.

[39]St. Rec. Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, p. 25, 10/16/03.

indicated that its judgment is independent of federal law and rests on a state procedural bar. *Glover*, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902. A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id.*

In the instant matter, the state appellate court issued the last reasoned opinion. The state appellate court determined that Cancienne was precluded from raising his claim regarding the inadmissibility of Dr. Benton's testimony on the ground it constituted hearsay testimony, because he failed to raise an objection at trial as required under La. C. Cr. P. art. 841. "It is well-settled that the contemporaneous-objection rule is an independent and adequate state procedural ground." *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir.), *cert. denied*, 537 U.S. 829 (2002) (citing *Wainwright v. Sykes*, 433 U.S. 72-87-88 s(1977)). Accordingly, Cancienne's claim is immune from federal review. *Id.*

A federal habeas petitioner, however, may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the

federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citation omitted); *Amos*, 61 F.3d at 338-39 (citations omitted).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim or objection despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

In this case, Cancienne has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. Further, this Court's review of the record does not support a finding that any factor external to the defense prevented Cancienne from properly objecting at trial to Dr. Benton's testimony. The record also does not reflect any action or inaction on the part of the State which prevented Cancienne from properly raising an objection.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir.1997), *cert. denied*, 523 U.S. 1014 (1998) (citation omitted). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and Cancienne has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir.), *cert. denied*, 444 U.S. 868 (1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir.1977)).

The instant claim is therefore procedurally barred from review by this federal habeas corpus court absent a showing that a fundamental miscarriage of justice will occur if the merits of the claim are not reviewed. *Hogue*, 131 F.3d at 497 (citation omitted). To establish a fundamental miscarriage of justice, Cancienne must provide this Court with evidence that would support a

"colorable showing of factual innocence."  *Kuhlmann v. Wilson*, 477 U.S. 436, 454(1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  To satisfy the factual innocence standard, Cancienne must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to his guilt.  *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tx.1997) (footnote omitted); *Nobles v. Johnson*, 127 F.3d 409, 423 n. 33 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139 (1998) (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  *Glover*, 128 F .3d at 903.

Cancienne does not present and the record does not contain evidence that suggests his actual innocence.  Accordingly, Cancienne has failed to overcome the procedural bar to the instant claim.  As such, the claim is procedurally barred and subject to dismissal with prejudice for that reason.

### D.    Portion of Victim's Letter

Finally, Cancienne complains that the trial court erred in admitting only a portion of a letter which the victim wrote to her aunt.  Cancienne asserts that the portion of the letter where the victim explains how she is so glad to have moved away from her step-grandmother should have been admitted into evidence since it showed that the victim wanted out of the house not to get away from "the man who allegedly abused her for three years," but rather, to get away from his wife.[40]

In response, the State argues that Cancienne was not prejudiced by the trial court's evidentiary decision.  The fact that the victim did not have a good relationship with her step-

---

[40]Rec. Doc. No. 4, p. 17.

grandmother and that an argument with her step-grandmother precipitated the victim's move from the house she shared with her grandfather and step-grandmother was established via the victim's testimony, along with testimony from the victim's mother.

A review of the trial transcript reflects that the State's assessment in this regard is correct. Specifically, the victim's mother testified that the victim left her grandfather's house and moved back in with her mother because the victim "got in a fight" with her step-grandmother.[41] Further, the victim's mother testified that the victim stated on more than one occasion that she disliked her step-grandmother.[42]

Similarly, the victim testified with respect to her relationship with her step-grandmother, stating that she did not like her and explaining why.[43] The victim also offered testimony regarding the fight she had with her grandmother and explained that the fight was what prompted her to move back in with her mother.[44]

Based upon the above, the Court finds that Cancienne was not prejudiced by virtue of the trial court's evidentiary ruling regarding the partial admission of the victim's letter to her aunt. As such, Cancienne is not entitled to habeas corpus relief.

## VI.  Insufficient Evidence (Ground 4)

Cancienne alleges that there was insufficient evidence to support his convictions. When conducting a post-AEDPA sufficiency of the evidence review, a federal court may grant relief only

---

[41]St. Rec. Vol. 6 of 10, p. 689, lines 29-32; p. 690, lines 1-3.

[42]St. Rec. Vol. 6 of 10, p. 700, lines 15-21.

[43]St. Rec. Vol. 6 of 10, pp. 748-751; Vol. 7 of 10, pp. 767-768.

[44]St. Rec. Vol. 6 of 10, p. 766, lines 29-32; p. 767, lines 1-11.

if it determines that the state court decision rested on an "unreasonable application" of clearly established Federal law, as determined by the Supreme Court, to the facts of the case. *See* 28 U.S.C. § 2254 (d)(1).

In its response, the State relies on the Louisiana Fifth Circuit's decision regarding Cancienne's insufficiency of evidence claim, arguing that Cancienne cannot demonstrate that the state appellate court's decision was contrary to, or involved an unreasonable application of clearly established federal law.

In its analysis of Cancienne's insufficiency of evidence claim, the Louisiana Fifth Circuit Court of Appeal first set forth the applicable Supreme Court law, along with corresponding state law, stating:

> In reviewing the sufficiency of the evidence, due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
>
> Under *Jackson*, a reviewing court is required to consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. The actual trier of fact is presumed to have acted rationally until it appears otherwise. *State v. Mussall*, 523 So.2d 1305 (La. 1988).[45]

The state appellate court then examined the essential elements of the crimes which Cancienne was convicted of committing.

> In the instant case, defendant was convicted of aggravated rape, in violation of La. R.S. 14:42. Aggravated rape is defined, in pertinent part, as:

---

[45]St. Rec. Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, p. 8, 10/16/03.

[A] rape[46] committed ... where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one of the following circumstances:

***

(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.

Defendant was also convicted of aggravated oral sexual battery, a violation of La. R.S. 14:43.4. Aggravated oral sexual battery is defined, in pertinent part, as follows:

Aggravated oral sexual battery is an oral sexual battery committed when the intentional touching of the genitals or anus of one person and the mouth or tongue of another is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:

***

(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.

Lastly, the defendant was convicted of aggravated incest, a violation of La. R.S. 14:78.1. Aggravated incest is defined, in part, as:

A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.

B. The following are prohibited acts under this Section:

(1) Sexual intercourse, sexual battery, aggravated sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a

---

[46]La. R.S. 14:41 defines rape as:

A. Rape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.

B. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.

> child into prostitution, or any other involvement of a
> child in sexual activity constituting a crime under the
> laws of this state.[47]

The state appellate court then reviewed Cancienne's specific arguments, the same arguments he raises in the instant habeas petition.[48] Specifically, Cancienne complained that because the victim could not recall the details of the alleged sexual abuse incidents, he could not adequately defend against her allegations. Further, Cancienne pointed to the defense's evidence that he suffers from erectile dysfunction, though he has never sought treatment for the condition; that he was away from home for much of the time the victim lived with him because of his work offshore; that, contrary to the victim's testimony, he did not generally lock the doors to his house; that he was very fastidious about keeping his vehicle clean so he would be hesitant to take his vehicle to a dusty area such as the Bonne Carre Spillway; that he made no secret of the fact that he had purchased a vibrator for the victim; and that his letter to the victim, which represented his effort to reconcile a fight between his wife and the victim, was "misunderstood."[49]

In response to Cancienne's argument, the Louisiana Fifth Circuit reviewed the evidence presented by the State. The Court specifically noted the victim's testimony to the effect that her grandfather forced her to engage in sexual intercourse when she was ten-years-old, that he forced her to perform oral sex on him when she was eleven-years-old, and that he continued to force her to engage in sexual intercourse and oral sex when she was twelve-years-old.

---

[47]St. Rec. Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, pp. 8-9 (footnote omitted), 10/16/03.

[48]Rec. doc. 4, pp. 18-21.

[49]The letter to which Cancienne is referring is the September 1, 2000 letter to A.C. wherein Cancienne exuberantly expresses his love for her. *See supra* at pp. 3-4.

The Louisiana Fifth Circuit then reiterated the well-established edict "that the testimony of the victim of a sex offense alone is sufficient to prove the elements of the offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant."[50] The court then noted that in the instant case, the State had not relied solely on the victim's testimony. Also supporting the State's case was the letter to the victim which Cancienne admitted that he had written, as well as the vibrator which Cancienne had purchased for his granddaughter.

The Louisiana Fifth Circuit concluded:

> Our review of the record as a whole reveals that the evidence presented at trial was clearly sufficient for the trier of fact to conclude beyond a reasonable doubt that defendant committed the offenses of aggravated rape, aggravated oral sexual battery, and aggravated incest. We are unpersuaded by defendant's arguments and find that this assignment of error lacks merit.[51]

Based upon the above, it is clear that the state court properly examined the elements necessary to prove aggravated rape, aggravated oral sexual battery, and aggravated incest, and determined, examining the evidence in a light most favorable to the prosecution, that all of the elements had been proven. As such, the court finds that the Louisiana Fifth Circuit Court of Appeal did not unreasonably apply the applicable law enunciated by the Supreme Court in *Jackson*, 443 U.S. at 307.

---

[50]St. Rec. Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, p. 10, 10/16/03.

[51]St. Rec. Vol. 1 of 10, tab 1, 5th Cir. Opinion, 03-KA-0366, p. 11, 10/16/03.

## VII.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that William Cancienne's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 23rd day of March, 2009

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**